IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. |
| | ) |
| MUHAMMAD BABAR CHAUDHRY, | ) |
| | ) |
| Defendant. | ) |

## THE UNITED STATES OF AMERICA'S MOTION FOR PRETRIAL DETENTION

The United States of America, by and through its attorneys, Matthew T. Drake, Acting United States Attorney for the Eastern District of Missouri, and Derek J. Wiseman, Assistant United States Attorney for said District, moves the Court, under Title 18, United States Code, Section 3141, *et seq.*, to order Defendant Muhammad Babar Chaudhry detained pending trial. In support of this motion, the United States provides the following.

## BACKGROUND

Defendant Chaudhry has been charged by a grand jury sitting in the Eastern District of Missouri with four counts of Wire Fraud, each count carrying a statutory maximum sentence of twenty years in prison. Under the United States Sentencing Guidelines, the United States estimates that Defendant Chaudhry will face a Sentencing Guidelines Range of 135–165 months' incarceration. As alleged in the Indictment, Defendant Chaudhry executed a sophisticated scheme to defraud a supermarket chain out of more than fifteen million dollars' worth of groceries and inventory.

## ANALYSIS

**I.     Having Both the Means and Motivation to Flee the Country, Defendant Chaudhry Must Be Detained Because He Poses a Serious Risk of Flight and No Conditions Can Assure His Appearance.**

Under the Bail Reform Act, a defendant must be detained where—as here—the case involves a serious risk of a defendant's flight, and no conditions can reasonably assure the

defendant's appearance. *See* 18 U.S.C. § 3142(f)(2)(A) ("The judicial officer shall hold a [detention] hearing . . . in a case that involves - - a serious risk that such person will flee[.]"); 18 U.S.C. § 3142(e)(1) (the "judicial officer shall order the detention of the person . . . [i]f, after a [detention] hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person").[1] Because Defendant Chaudhry has substantial means and motivation to flee the country, he must be detained as he poses a serious risk of flight and there are no conditions than can assure his appearance.

A. **There Is a Serious Risk That Defendant Chaudhry Will Use His Considerable Resources to Flee Because He Is Facing a Lengthy Prison Sentence And He Has Substantial Ties to Pakistan.**

The nature and circumstances of Defendant Chaudhry's crimes—along with the overwhelming proof establishing his guilt—demonstrate Defendant Chaudhry's serious risk of flight. Indeed, Defendant Chaudhry executed a sophisticated scheme to defraud a supermarket chain out of more than $15 million in groceries and inventory. As part of his fraud scheme, Defendant Chaudhry sold those items to gain millions of dollars in proceeds. Based on the seriousness of Defendant Chaudhry's crimes—and the proof beyond a reasonable doubt establishing his guilt—Defendant Chaudhry will receive a substantial term of imprisonment, which is likely to run more than ten years.

The likelihood of such a lengthy prison sentence—combined with Defendant Chaudhry's substantial connection and frequent travels to Pakistan—demonstrate his incredible motivation to flee. *See United States v. Cook*, No. 23-3147, 2023 WL 8463702, at *4 (8th Cir. Dec. 7, 2023) (holding that "the serious risk of flight and nonappearance is obvious[,]" in part, because the defendant "face[d] a potentially lengthy prison sentence if convicted . . . [and] she has not served

---

[1] As the Eight Circuit Court recently recognized, the determinations of whether a defendant poses a serious risk of flight and whether any conditions can assure his appearance "substantially overlap," and courts should consider the Section 3142(g) factors to make those determinations. *United States v. Cook*, No. 23-3147, 2023 WL 8463702, at *3 (8th Cir. Dec. 7, 2023); *see also* 18 U.S.C. § 3142(g) (including relevant factors, such as the nature and circumstances of the crimes and the weight of the evidence against the defendant).

2

a prison term before[.]"); *United States v. Abad*, 350 F.3d 793, 799 (8th Cir. 2003) ("Abad faces a maximum sentence of 30 years, *see* 18 U.S.C. § 2423(b), which . . . weighs strongly in favor of a finding Abad would be a flight risk.").

Not only is Defendant Chaudhry facing a lengthy prison sentence here in the United States, but he also has the ability to flee to Pakistan—a country where Defendant Chaudhry regularly travels, where he has citizenship, and where many of his family members reside. In fact, an analysis of Defendant Chaudhry's bank records reveals that he has wired at least $175,000 to his family members in Pakistan since May of 2022. Without a Mutual Legal Assistance Treaty with the United States, Defendant Chaudhry's home country of Pakistan is a destination where he can attempt to flee from prosecution. Those facts alone demonstrate a substantial risk of flight. *See United States v. Cha*, No. 8:23-CR-86, 2025 WL 1513576, at *4 (D. Neb. May 28, 2025) ("[T]he lack of an extradition treaty with a country the defendant frequently travels to and has citizenship in increases the risk of flight. In addition, the defendant has considerable financial resources he could utilize to flee . . . The combination of financial resources and foreign connections is potent[.]").

In addition to his substantial motivation to flee to Pakistan, Defendant Chaudhry also has the means to flee back to Pakistan. As the Indictment makes clear, Defendant Chaudhry defrauded a supermarket chain out of over $15 million worth of groceries and inventory that he sold to enrich himself. That is more than sufficient to establish a serious risk of flight. *See United States v. Maheshwari*, 358 F. App'x 765, 766–67 (8th Cir. 2010) (affirming the district court's detention order where the defendant was "an Indian native present in the United States on a visa" who also traveled internationally and expressed an interest in returning to India or Pakistan).

**B.     Through His Persistent Fraud and Unwillingness to Follow Court Orders, Defendant Chaudhry Has Demonstrated That There Are No Conditions That Will Reasonably Assure His Appearance.**

Defendant Chaudhry's established unwillingness to conform his conduct to the law demonstrates the ineffectiveness of any conditions to assure his appearance. That's true because every pretrial condition that this Court could impose relies—at least to some extent—on Defendant Chaudhry's ability to adhere to the rules of the Court and the laws of the United States. His proven inability to do so shows why detention must be imposed.

Defendant Chaudhry not only defrauded the victim supermarket chain out of $15 million worth of groceries and inventory, but he has also consistently violated court orders in the victim supermarket's civil actions to collect on Defendant Chaudhry's debts. Indeed, Defendant Chaudhry has violated nearly every court order that has been entered in the victim's civil actions against him. Those court orders include **(1)** an order from a state court requiring Defendant Chaudhry to turn over the victim's assets to a court-appointed receiver,[2] and **(2)** a federal court's order enjoining Defendant Chaudhry's grocery stores from using the victim's trademarks.[3] Based on Defendant Chaudhry's persistent violations of court orders, a state judge—just last month—declared that Defendant Chaudhry "has a problem listening when he's told [by the Court] not to do things." *See* Attachment C ("Transcript of State Contempt Proceedings"), p. 366.

Through his established unwillingness to abide by court orders, Defendant Chaudhry has demonstrated that there are no conditions that will assure his appearance. *See United States v. Smith*, No. 17-MJ-111-LRR, 2017 WL 1731711, at *4 (N.D. Iowa May 3, 2017) (holding that

---

[2] *See* Attachment A ("Ohio State Receivership Order"). In concluding that a receivership was appropriate, the court noted that Defendant Chaudhry "no intention of paying his debts to [the victim]" and would "not hesitate to do as he pleases, despite enforceable agreements that say otherwise, to obtain his desired result." *Id.* at 38.
[3] *See* Attachment B ("Federal Preliminary Injunction").

4

detention is appropriate "given Defendant's repeated noncompliance with conditions of supervision and prior court orders").[4]

## II. Even if Conditions Could Assure Defendant Chaudhry's Appearance—Which They Cannot—He Still Must Be Detained Because No Conditions Can Protect the Community from Defendant Chaudhry.

Under the Bail Reform Act, the Court "shall order the detention of" Defendants like Muhammad Babar Chaudhry "[i]f, after a [detention] hearing . . . the [Court] finds that no condition or combination of conditions will reasonably assure the . . . safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The nature and circumstances of Defendant Chaudhry's crimes—along with his history and characteristics—demonstrate that no conditions can safeguard the community from Defendant Chaudhry.

After defrauding a supermarket chain out of more than $15 million in groceries and inventory, Defendant Chaudhry has spent the last two years causing untold financial harm to the victim. For example, after refusing to pay the victim for any of the groceries that he fraudulently obtained, Defendant Chaudhry had a malicious and defamatory email sent to all of the victim's retail partners in an attempt to inflict further financial harm on the victim. To conceal his identity, Defendant Chaudhry had the email sent from a burner email account under the name "Ken Thompson." That email—sent on August 2, 2024—falsely warned the victim's retail partners that the victim was "in discussions to file bankruptcy protection." Not only was Defendant Chaudhry's email false, but it was also sent to deceptively convince the victim's retail partners to no longer do business with the victim. Such an action by Defendant Chaudhry indicates the ongoing financial danger that he poses.

After his defamatory email, Defendant Chaudhry continued his efforts to inflict financial harm on the victim. Earlier this year, for instance, Defendant Chaudhry directed the removal of

---

[4] Defendant Chaudhry's actions also demonstrate that there is a serious risk that he "will obstruct or attempt to obstruct justice." *See* 18 U.S.C. Section 3142(f)(2)(B).

valuable copper from one of the victim's grocery stores. In all, the victim estimates that Defendant Chaudhry's copper removal will cost the victim over $1,000,000. In an additional effort to inflict financial harm on the victim, Defendant Chaudhry had concrete poured down the sinks and drains at the victim's grocery stores, which prevents the transmission of wastewater to sewer lines. Through those actions alone, Defendant Chaudhry has caused tens of thousands of dollars in damage over the last few months.

Based on Defendant Chaudhry's persistent fraud and misconduct, there is no reason to believe that he will stop causing financial harm after the Indictment in this case. Therefore, because there are no conditions that can assure the safety of the community from Defendant Chaudhry, this Court should order pre-trial detention under the Bail Reform Act.

## **CONCLUSION**

Defendant Chaudhry must be detained under the Bail Reform Act because he poses a serious risk of flight and no conditions can assure his appearance. But even if conditions could assure Defendant Chaudhry's appearance—which they cannot—Defendant Chaudhry must still be detained under the Bail Reform Act because no conditions can assure the safety of the community from Defendant Chaudhry.

Respectfully submitted,

MATTHEW T. DRAKE
Acting United States Attorney

*/s/ Derek J. Wiseman*
DEREK J. WISEMAN #67257MO
Assistant United States Attorney
Thomas F. Eagleton Courthouse
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200