*United States of America v Muhammad Babar Chaudhry*
Case 4:25-cr-00380-JMD-JMB-1

REQUEST FOR BAIL HEARING

EXHIBIT A:  Detention Hearing Transcript August 8, 2025

Detention Hearing - 08/08/2025

1                UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF MICHIGAN
2                    SOUTHERN DIVISION

3 **UNITED STATES OF AMERICA,**

4                Plaintiff,

5      vs.                        Case No. 25-30497

6 **MUHAMMAD BABAR CHAUDHRY,**

7                Defendant.

8 _____/

9

10                   **DETENTION HEARING**
       **BEFORE THE HONORABLE ELIZABETH A. STAFFORD**
           United States Magistrate Judge
11        Theodore Levin United States Courthouse
          231 West Lafayette Boulevard
12               Detroit, Michigan
           Friday, August 8, 2025

13

14

    **APPEARANCES:**
15

    **FOR THE PLAINTIFF:**            **FOR THE DEFENDANT:**
16

    **ANDREW PICEK**                **SANFORD A. SCHULMAN**
17     United States Attorney's Office    500 Griswold Street
    211 West Fort Street          Suite 2340
18     Suite 2001                  Detroit, Michigan 48226
    Detroit, Michigan 48226       313.963.4740
19     313.226.9652

20

21

22
        TRANSCRIBED BY:  April A. Kurtz, CSR-7347, RPR, FCRR
23                  www.transcriptorders.com

24
         (Transcriber not present at live proceedings.
25        Transcript produced from digital recording.)

```
 1                         TABLE OF CONTENTS

 2

 3    MATTER _____ PAGE

 4    Detention Hearing

 5

 6    Proffer by Mr. Picek................................ 4
      Argument by Mr. Picek.............................. 10
 7    Argument by Mr. Schulman.......................... 11
      Rebuttal Argument by Mr. Picek.................... 15
 8    Ruling by the Court............................... 19

 9

10    Certificate of Reporter:.......................... 20

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   Detroit, Michigan
 2   Friday, August 8, 2025
 3   1:40 p.m.
 4                         *   *   *
 5            THE CLERK:   The Court calls Case Number 25-30497,
 6   United States of America versus Muhammad Babar Chaudhry.
 7            MR. PICEK:  Good afternoon, your Honor.  Andrew Picek
 8   for the United States.
 9            MR. SCHULMAN:  And good afternoon, your Honor.
10   Sanford Schulman appearing on behalf of Muhammad Chaudhry, who
11   is to my left.  His wife and family members are here.
12            Appreciate your Honor calling this case in a timely
13   manner.
14            THE COURT:  No problem.
15            Good afternoon to both of you.
16            Mr. Chaudhry, please state your full name.
17            THE DEFENDANT:  Muhammad Babar Chaudhry.
18            THE COURT:  Mr. Chaudhry, you have the right to
19   remain silent.  Anything you say may be used against you.
20            We're here for the detention hearing.
21            And that hearing is going forward?
22            MR. PICEK:  Yes, your Honor.
23            MR. SCHULMAN:  Yes, your Honor.
24            THE COURT:  Okay.  Mr. Picek, how do you plan to
25   proceed?
```

```
 1          MR. PICEK:  Your Honor, the Government will be
 2   proceeding by proffer.
 3          THE COURT:  All right.  I'll hear your proffer and
 4   argument.  And then, afterwards, I'll hear from Mr. Schulman.
 5          MR. PICEK:  Thank you.
 6          Your Honor, the Government's proffer is based upon
 7   information contained --
 8          THE COURT:  I'm sorry.  One moment.
 9          I just want to confirm.  Counsel has received a copy
10   of the Pretrial Services report, correct?
11          MR. SCHULMAN:  I have, yes.
12          MR. PICEK:  Yes, your Honor.
13          THE COURT:  And, Mr. Schulman, you've received a copy
14   of the Government's motion?
15          MR. SCHULMAN:  I have.
16          THE COURT:  And you understand that the Government is
17   proceeding on a serious risk of flight, as well as a serious
18   risk of obstruction of justice?
19          MR. SCHULMAN:  Yes, I am.
20          THE COURT:  All right.  Go ahead, Mr. Picek.
21          MR. PICEK:  Thank you, your Honor.
22          Your Honor, as I said, the Government's proceeding by
23   proffer.  I'm relying upon the Pretrial Services report,
24   information contained in the indictment, the motion that was
25   filed in the Eastern District of Michigan, as well as
```

Case 2:25-mj-30497-DUTY-MBF No. 11 PageID.28 Filed 08/08/25 Page 5 of 20
Case 2:25-mj-30497-DUTY-MBF Doc 11 Page ID.28 Filed 08/08/25 Page 6 of 20
PageID #: 502

Detention Hearing - 08/08/2025                                        5

1  information received from the FBI, information regarding the

2  defendant's travel and financial transactions, and Bracken

3  County sheriff's report regarding an outstanding warrant.

4          I'd like to start with the offense conduct here,

5  which is detailed in the indictment, so I'll just summarize

6  what the defendant is charged with in this indictment, briefly.

7          This appears to be a sophisticated wire fraud scheme

8  that the defendant perpetrated.  He had a prior business

9  relationship with a supermarket that supplied groceries to his

10  business for 38 stores that he operated really throughout the

11  states of Ohio and Kentucky.  That relationship started around

12  May of 2021, and lasted into 2023, apparently with no -- no

13  issues or concerns until around March of 2023, when the

14  defendant then started this fraud scheme.

15          He was able to get the victim supermarket to give him

16  28 days to pay for invoices and receive the product up front.

17  And their allegation is that he received, once in March, over

18  seven million dollars' worth of product.  That's wholesale

19  value.  And then he sold the product with no intent on ever

20  paying for it and used the proceeds for his own personal

21  benefit.

22          He then, after that, sent false information to the

23  victim claiming that he was out of the country.  Had an email

24  sent claiming that there was fraud on his business accounts and

25  so he couldn't pay.  And through that was able to induce the

1    victim to provide another seven million dollars' worth of goods

2    in April.  And it was determined that in fact there was not

3    this claimed fraud issue with his account.

4           I don't believe he was out of the country at that

5    time, either.  But, instead, he had withdrawn the funds from

6    his business accounts that the victim had access to so that

7    they were not able to access them and receive payment.

8           And he also, then, thereafter sent false information

9    regarding alleged wire transactions for approximately three and

10   a half million dollars, two of them, including fake wire

11   numbers to the victims to continue try to string them along.

12          So, in total, I think it's around 15 million dollars'

13   worth of product that was essentially stolen by the defendant,

14   and that he likely sold through his stores for much more than

15   that.

16          From that, as well as the Pretrial Services report,

17   we know that the defendant does have significant assets, a

18   house and land worth approximately 1.2 million dollars that he

19   reports business that's he values at 10 to 15 million, 30,000

20   in cash that he claims he had in the bank, and we know from the

21   fraud allegations that he likely has access to a significant

22   more of money.  That was just what was disclosed.

23          He disclosed one car to Pretrial Services but did not

24   let -- or tell them about his Mercedes.  He has numerous

25   businesses that he disclosed as well.

Detention Hearing - 08/08/2025

7

1     The outstanding warrant that he has from Bracken

2  County, Kentucky, that is -- I guess, first, I'll -- I'll note

3  that they have -- it's a full extradition warrant nationwide

4  and that indicated they will pick him up if he is released here

5  and have requested marshals to hold him so that they may do

6  that.

7     In any event, that warrant was issued on July 18th of

8  this year and is connected to a $50,000 bad check that he made

9  to a food distributor that was providing -- it was a bunch of

10 meat to one of his stores.

11    The defendant faces significant punishment in the

12 Eastern District of Missouri for this offense, including a

13 guideline range in excess of 10 years based upon the amount of

14 money involved in the offense.

15    He has frequently traveled to Pakistan, which I

16 believe he was born in Pakistan, but he is a United States

17 citizen.  I'm not certain of the status of his Pakistani

18 citizenship.  I know he indicates his passport was taken or

19 lost some time ago.

20    But I point that out that Pakistan and the United

21 States do not have an extradition treaty in place, and so it is

22 not possible to get him back from Pakistan should he return

23 there.

24    We know that he sent at least approximately $175,000

25 to family in Pakistan since May of 2022.

USA vs. Muhammad Babar Chaudhry - 25-30497

1       As noted in the motion in the Eastern District of

2  Missouri, he has an unwillingness to comply with court orders,

3  specifically, an order in a state court proceeding where he was

4  required to turn over victim assets to a receiver, a federal

5  court order that enjoined him from using victim trademarks, and

6  there was even the comment in the state court contempt

7  proceedings where the state court judge noted that the

8  defendant, quote, has a problem listening when he's told by the

9  court not to do things.

10      I also want to note -- and this comes from that same

11 motion -- that after the defendant refused to put -- to pay for

12 these 15 million dollars' worth of groceries that he received,

13 he had sent an email using what was described as a burner

14 account to other retail partners of the victim store, telling

15 them that the victim was going to be filing for bankruptcy.

16      And this appears to have been an attempt by the

17 defendant to defame and cause further harm or intimidate the

18 victim by doing so.

19      There are also allegations that the defendant had or

20 directed, so had someone else remove approximately $1,000,000

21 worth of copper from a victim's store, and also had someone

22 pour concrete down the sinks and drains at multiple victim

23 grocery stores causing significant damage over the last few

24 months.  And under the circumstances, that appears solely to be

25 attempt at retribution towards the victim for seeking justice

Case 2:25-mj-30497-DUTY-DRG ECF No. 11, PageID.32 Filed 08/08/25 Page 9 of 20
Case 2:25-mj-30497-DUTY-JMR ECF No. 14, PageID.506 Filed 08/25/25 Page 10 of 21
PageID #: 506
Detention Hearing - 08/08/2025
9

1   for the theft.

2           THE COURT:  Will you -- poured concrete where?

3           I'm sorry.

4           MR. PICEK:  The -- it says that he had concrete

5   poured down the sinks and drains at the victim's grocery stores

6   which prevented the transmission of wastewater and sewer lines,

7   and that caused tens of thousands of dollars in damage over the

8   last few months to those stores.

9           The defendant does have a history of international

10  travel.  Based upon the information I was able to obtain, it

11  appears -- I think, primarily, he's traveling to Pakistan.  The

12  records -- the flight records we see that he flies usually from

13  Toronto to an airport in the Middle East, and I think he's

14  connecting to Pakistan.

15          He traveled there twice in 2019, once in 2021, twice

16  again in 2022.  And then, consistent with his report to

17  Pretrial Services, he just returned from Pakistan to Toronto.

18  I think his return flight was around July 20th.  And then he

19  was arrested when he re-entered the United States.

20          There is also a number of wire transfers to family, I

21  think probably not coincidentally, beginning in March of '23

22  when this conduct started.  And there were three significant

23  transfers -- I don't have the dollar amounts -- to a family

24  member in Pakistan, in March of '23, October of 2024, and

25  February of 2025.

Detention Hearing - 08/08/2025

1        Moving on to my argument, your Honor.

2        I do believe this defendant does pose a danger to the

3    victims and other individuals who he may seek to defraud.  And

4    he is a risk of flight and also a risk of -- there's a risk

5    that he will obstruct justice or seek to intimidate the victims

6    and witnesses in the pending case.

7        Pretrial Services also recommends detention for

8    Mr. Chaudhry.

9        Regarding his danger, that -- you know, danger does

10   include financial harm.  We have in here a significant amount

11   of financial harm that he has caused, not just from his fraud,

12   but from his, you know, attempts to defame the victims

13   afterwards, as well as the theft of copper and the vandalism to

14   the stores.

15       And those allegations occurred after the fraud was

16   uncovered, some of them, where he's seeking to cause further

17   harm.

18       And so, I think, you know, that shows significant

19   risk that he will continue to obstruct or intimidate those

20   witnesses, especially with his history of failing to abide or

21   follow court orders, as demonstrated by the motion filed in the

22   Eastern District of Michigan.

23       I also believe he is a risk of flight --

24       THE COURT:  You mean the Eastern District of

25   Missouri?

Detention Hearing - 08/08/2025

 1          MR. PICEK:  Missouri.  I'm sorry.

 2          THE COURT:  No problem.

 3          MR. PICEK:  He is a risk of flight because of his

 4   history of international travel, as well as the significant

 5   assets that he has access to.

 6          You know, with or without a passport, someone with

 7   access to millions of dollars of assets certainly is capable of

 8   finding their way out of the country and into Pakistan.  And so

 9   just because he may not have travel documents, I don't think

10   that's sufficient to ensure that he will remain in the United

11   States.  He has no ties to this district or the charging

12   district.  He resides in Ohio.

13          And so if he does flee, as noted, we'd have no way to

14   get him back if he does go to Pakistan.

15          And again, as I said, the history of non-compliance,

16   and so there are no conditions or combination of conditions

17   that will reasonably assure his appearance or protect the

18   victims or others from further harm by the defendant, nor

19   ensure his appearance at trial.

20          Thank you, your Honor.

21          THE COURT:  Thank you.

22          Mr. Schulman?

23          MR. SCHULMAN:  Your Honor, I can't remember seeing

24   such a favorable Pretrial Service report and such an

25   unfavorable recommendation.

Case 2:25-mj-30497-DUTY-JBF No. 1, Page ID.35 Filed 08/08/25 Page 13 of 21
Case 2:25-mj-30497-DUTY-JBF No. 1, Page ID.35 Filed 08/08/25 Page 13 of 21
PageID #: 509

12
Detention Hearing - 08/08/2025

1      I was going through my entire checklist of items that

2   I typically have to address in these detention hearings and

3   none of those seem to apply in this case.  It's not a

4   presumptive case.  The prosecutor should have mentioned that.

5   Unlike other cases, there's no mandatory minimums.

6      He is a U.S. citizen.  He has a home in Columbus.

7   And I think that's where we should start.

8      You know, with this world today, the fact that he has

9   no home in Missouri, doesn't really -- shouldn't impact the

10   court much.  We do transactions all the time with people out of

11   state.

12      But he has a home, and he's got four minor children

13   and a wife, and they're all living in Missouri.  And his wife

14   is here and his family -- I'm sorry, they're living in

15   Columbus, Ohio.  And he has been in Missouri, done -- done

16   transactions there.

17      This entire case is a civil case, which is pending.

18   He has a civil lawyer.  And he's been litigating these issues.

19      The -- the idea that he got them to pay money,

20   businesses don't just get them to pay money.  And induced to

21   pay money?  These were arm's length companies that are in it

22   for profit.  They know exactly what they're doing, and they

23   know what they're transactioned for.  So this is all a complex

24   litigation, matters of litigation, and it was in civil court.

25   And no civil judge ever held him in criminal contempt or locked

1  him up.

2          There was, at one point, a receiver appointed.  And I

3  thought the Government had an issue with that.  They didn't

4  bring that up.  But they were dealing with assets and trying to

5  resolve these cases.

6          He has no criminal history.  He doesn't have even any

7  police contact.  He's never failed to appear.  No capias

8  history at all.  He's never defaulted even on those civil

9  cases.  He's appeared even in Missouri for -- I read the

10  deposition.  He has a lawyer there, and the lawyers all

11  completely felt like they were bamboozled by all this.

12          Someone obviously contacted the prosecutor and

13  brought their side of the story and -- and here we are.

14          The -- he -- he's not charged with any assaultive

15  crime.  This is -- there's no -- I understand that this is the

16  issue of flight, but I think it's important to note that

17  there's no issues of threat to the community in any shape or

18  form.

19          He's the sole provider for his family.  You know,

20  he's filed tax returns every year; every year, he filed them

21  and has no issues with that.

22          He -- he -- the idea that he has left the country,

23  well, he's also returned to this country.  I mean, the point is

24  he's gone there and come back without any issues.  His passport

25  has been surrendered.

1        I mean, to give up those four beautiful children and

2   his wife and everything that he lives for is a pretty high loss

3   if they presume that he's even going to have the capability to

4   leave the country.

5        You know, I've seen physicians walk in here facing

6   mandatory 20 years, and they have resources, too.  The idea

7   though here is, what makes him a flight risk?  And it's really

8   not clear what it is.

9        The Kentucky case had to do with an insufficient

10  check.  Again, it's civil in nature.  A bounced check in a

11  relatively reasonable amount that could have and should have

12  been resolved, I don't know what the status of that is.

13       And, you know, this idea of property damage is not a

14  -- has not been a felony misdemeanor, not even a ticket written

15  about any of that related to Mr. Chaudhry.

16       I just -- I would ask the Court to consider some

17  conditions.  And I think the Court can fashion to -- to

18  alleviate any concerns, if it's a tether, if it's, you know,

19  the restrictions that we typically see that Pretrial Services

20  can -- can -- can, you know, elicit conditions that they think

21  are appropriate.

22       But looking at this report and having no real

23  criminal contacts or history, and the civil lawsuits that I've

24  read, you know, there's some very complicated civil lawsuits

25  that I've read that I thought, well, why aren't these criminal?

1  And they're always the cases where, in business, somehow

2  business partners always think it's good when they're doing

3  their business, but when things don't always work out, all of a

4  sudden, it becomes criminal, I guess.

5        (Inaudible conversation)

6        MR. SCHULMAN:  Just one second.

7        All I know is there's a significant litigation

8  regarding these businesses, and there's an entire story that

9  I'm not gonna lay out here.  This is not the trial, but I've --

10  the litigation is voluminous depositions and motions and

11  hearings.  So he's not just defaulted and was trying to leave

12  the country.  He was litigating it, dealing with it.  And --

13  and I believe that this is more just in a civil court, but even

14  if it's in criminal, a bond is reasonable, and I think there

15  are conditions the Court can fashion.

16        THE COURT:  Thank you.

17        Mr. Picek, any brief rebuttal?

18        MR. PICEK:  Your Honor, the only remark would be

19  regarding this being a civil matter.  Obviously, a federal

20  Grand Jury did find probable cause that these federal offenses

21  were committed, and they are serious offenses.

22        And that's all.  Thank you.

23        THE COURT:  Thank you.

24        Mr. Chaudhry is presumed innocent.  It is the

25  Government's burden to prove by a preponderance of the evidence

Detention Hearing - 08/08/2025

1   that he is a serious flight risk, which is 51 percent.  It's

2   not the same as beyond a reasonable doubt.

3          This raises a question that I don't have a definitive

4   answer to.  And that is that under the Bail Reform Act, the

5   Government could request a detention hearing only based upon

6   the serious risk of flight or serious risk of intimidation, but

7   courts have held that once a detention hearing is set that the

8   Court can consider the danger to the community as well.

9          I think that makes sense, even though I also don't

10  think I really need to go there to find that the Government has

11  met its burden.

12         Mr. Schulman is right.  This is a very unique case.

13  This does not look like the Pretrial Services report that you

14  ordinarily see.  But I can't agree with Mr. Schulman that this

15  is simply a civil matter that should be handled in civil court,

16  because the Grand Jury has found, and the Grand Jury has -- has

17  seen the evidence and has found probable cause that

18  Mr. Chaudhry engaged in fraud with the -- that he -- with the

19  intent to de- -- devise and intended to devise a scheme, an

20  artifice to defraud victim supermarket and to obtain money and

21  property from victim supermarket by means of material false and

22  fraudulent pretenses.

23         The allegations in the indictment are that

24  Mr. Chaudhry lured the victim supermarket into trusting him,

25  then entered into the agreement, received millions of dollars'

1   worth of groceries recent and never intended to pay that money

2   back.

3        The -- there is an order -- and let me bring this up

4   -- from --

5        (Inaudible conversation)

6        MR. SCHULMAN:  Just one second, your Honor.

7        Thank you, Judge.

8        THE COURT:  There is a decision appointing a receiver

9   where there was testimony, evidence was admitted, and the

10  findings are in line with some of the allegations made in the

11  indictment.  Some of those allegations involve fraud, as

12  Mr. Picek described, including moving money in a way to

13  preclude the victim from being able to access the funds, giving

14  fraudulent account numbers, acts of deceit.

15       There are also allegations that Mr. Chaudhry

16  disregarded court orders and seems to have operated as if he

17  was immune from consequences.

18       The allegations are that at, really, every turn,

19  Mr. Chaudhry engaged in deceit to avoid the responsibility of

20  paying the victim what it was owed.

21       And that makes it different than your average

22  commercial dispute where one party has not paid often because

23  of some sort of dispute, some business dispute, about who --

24  what is owed or because the one party does not have the means

25  to pay what's owed.  The allegations are -- here, are of a plan

Page 18

1    to rob the victims.

2            I did not hear evidence to support the allegation

3    that Mr. Chaudhry was the one who removed the copper or had

4    anything to do with removing the copper from the victim's

5    properties or poured the concrete down the stairs, and so

6    forth.

7            There was a proffer that Mr. Chaudhry used

8    trademark -- used the victim's trademark and the -- there

9    appears to have been an investigation and finding that

10   Mr. Chaudhry used the burner account to defame the victim.

11           And I think that, a lot of times, people don't

12   think of financial crimes as being as serious as violent

13   crimes, but people can have their whole savings, their whole

14   life savings disappear.  They can have a business that they

15   put their -- their blood and soul into, their sweat, blood,

16   building a business and have it destroyed by someone, and

17   that can be very devastating.

18           So I do view the allegations as being serious and

19   concerning.

20           And another part of this case that is -- you had

21   the deceit and the scheming coupled with alleged means to

22   flee by financial means and connections to a country that

23   does not have an extradition treaty.

24           So I do think that the Government has shown, by a

25   preponderance of the evidence, number one, that Mr. Chaudhry

Detention Hearing - 08/08/2025

Page 19
1  presents a serious risk of flight.  And number two,

2  especially because of the email scheme, which I do believe

3  there is more of a foundation that's been established for

4  tying that to Mr. Chaudhry, that he will seek to intimidate

5  and further injure the victim.

6           And so I agree -- as I said, Mr. Schulman, this is

7  not a common case.

8           And I will also say that Mr. Schulman said, well,

9  the $50,000 bad check, that that is another civil matter, I

10 don't know the circumstances about that.  I find it

11 surprising that there is a warrant to pick up for that

12 $50,000 check.  And what I infer from that is that this was

13 just not a bad check, that this was something that was

14 considered to be criminal in nature, perhaps similar to the

15 allegations in the indictment here.

16          So, for those reasons, I am going to order

17 Mr. Chaudhry detained pending trial.  And I'm going to sign

18 the order transferring him to the Eastern District of

19 Missouri.

20          Mr. Schulman, is there anything else you need me

21 to do today?

22          MR. SCHULMAN:  Not at this time.

23          THE COURT:  Mr. Picek?

24          MR. PICEK:  I think the copy that you have from

25 yesterday, there may be a typo.

Detention Hearing - 08/08/2025

Page 20

1          THE COURT:  Okay.

2          MR. PICEK:  So I have a (indiscernible) copy.

3          THE COURT:  Thank you.  Is there anything else you

4     need me to do today, Mr. Picek?

5          MR. PICEK:  No, your Honor.  Thank you.

6          THE COURT:  Thank you.

7          MR. SCHULMAN:  Thank you.

8          THE COURT:  Thank you.

9          (PROCEEDINGS CONCLUDED AT 2:08 p.m.)

10                    * * * * *

11              **C E R T I F I C A T I O N**

12        I certify that the foregoing is a correct transcription

13    of the record of proceedings in the above-entitled matter.

14

15    **s/ April A. Kurtz, CSR-7347, RPR, FCRR        08/25/2025**
      April A. Kurtz, CSR-7347, RPR, FCRR            Date
16    Official Court Reporter

17

18

19

20

21

22

23

24

25